*W. W. Zimmerman,* for plaintiff.

*C. A. Manchester,* for David M. Ramsey.

---

## IDENTICAL ACTS PRESCRIBING DIFFERENT PENALTIES.

[Circuit Court of Lorain County.]

ROSWELL DERBY, JR., v. THE STATE OF OHIO.

Decided, November, 1902.

*Courts of Review—May Determine which of Two Acts is in Force— Where Identical Except as to Penalty—Method of Determination —Better Dismiss One Found Guilty—Than to Enforce an Unauthorized Sentence—Fish and Game Regulations—Criminal Law.*

1. Where an annual volume of laws contains two acts, identical except as to the penalty imposed, and both signed on the same day, it is competent for a reviewing court, having before it the case of an accused person sentenced under one of these acts, to determine whether the act under which sentence was pronounced was the one actually in force.

2. In determining such a question, resort will first be had to the journals of the two houses of the General Assembly, and failing to thus establish which act was the last to be signed, the one which appears last in the printed volume, and to which the compiler of that volume has given the highest number, will be presumed to be the latest expression of the law-making power on that subject.

3. To permit one who has been convicted of an offense against the laws of the state to go scot free, is a much less serious matter than to attempt to carry into effect a sentence wholly unauthorized by law; and where it appears that the sentence imposed is without

authority of law, the accused will be discharged, notwithstanding the time within which the sentence might be corrected has long passed.

MARVIN, J.; HALE, J., and CALDWELL, J., concur.

The plaintiff in error was arrested and brought before a justice of the peace upon the charge of having on June 8, 1901, in the county of Lorain and state of Ohio, "unlawfully, knowingly, purposely and willfully caught certain fish by means of and with a certain device called a seine."

This is in violation of the statutes of Ohio. The affidavit making the charge has all the negative averments and all other averments sufficient to describe the offense under the statute.

Thereafter, on December 26, 1901, the case came on for trial before the justice and a jury. The trial was not completed until December 27. The result was a verdict of guilty against the defendant. Motion for a new trial was filed and overruled, and judgment entered upon the verdict, and on January 4, 1902, the court pronounced sentence that "R. Derby, Jr., the defendant, pay a fine of $100, and in case of neglect or refusal to pay said fine, be imprisoned in the workhouse for the full period of thirty days, or until the amount of said fine be paid or secured to be paid, or he be otherwise legally discharged, and that he pay the cost of the prosecution." To which sentence the defendant excepted.

To reverse this judgment and sentence of the justice there was filed in the court of common pleas a petition in error, together with a transcript of the docket entries made by the justice, the original papers, and what purports to be a bill of exceptions. This bill of exceptions does not set out all the evidence adduced before the justice, so that there was presented to the court of common pleas no question as to whether the facts warranted the conviction. Upon hearing in the last-named court the judgment of the justice was affirmed.

The proceeding in this court is brought for the purpose of reversing the judgment of affirmance and the judgment of the justice.

Among the errors complained of is the sentence which was pronounced by the justice, which was, that the plaintiff in error pay a fine of $100. It is urged on behalf of the plaintiff in error that this sentence was not authorized by any statute of the state in force at the time the sentence was pronounced. This necessitates an examination of the statutes. In 94 O. L., 321, appears a statute passed as an amendment to Section 6968, Revised Statutes. This statute is attested by the speaker of the House of Representatives and the president of the Senate, and after such signatures there appears in the printed volume the words "Passed April 16, 1900," and also the figures and letter following, "206 G." On page 349 of the same volume appears a statute passed as an amendment to the same section. This is also attested by the signatures of the speaker of the House of Representatives and the president of the Senate, and after such signatures appear the words "Passed April 16, 1900," and the figures and letter "226 G." By the statute first mentioned the fine for the offense, of which the plaintiff in error was convicted, is fixed at not less than $25 nor more than $100. The other statute fixes the fine for the same offense at not less than $25 nor more than $50.

It is manifest that both these statutes can not be in force at one and the same time; for the maximum fine for an offense can not be at the same time *fifty* dollars and *one hundred* dollars. Under the rule that statutes take effect from the date at which they are signed by the presiding officers of the two houses of the Legislature, it would appear from what has already been quoted that each of these two statutes took effect on April 16, 1900, and though it is admitted on the part of the defendant in error that both can not have been operative at the same time, yet it is said that the justice might have ascertained by evidence which one of the statutes was as a matter of fact last passed by the Legislature, because it is said that the one last passed must be the one in force.

It is further urged that since the evidence upon which the justice acted in determining which of these statutes was last passed is not before this court, we must presume that he did take evidence, and that the evidence was such as to justify

the finding that the statute fixing the maximum fine at $100 was last passed. This is urged strenuously, and our attention is called from a written communication from the attorney-general of the state, in which this argument is used. However plausible the argument, it is manifestly unsound. It overlooks the proposition that courts must take judicial notice of the statutes of their own state in force at the time. It must be conceded that the reading of the two statutes does not disclose which was last passed, and that, therefore, some evidence outside of the reading must be had; and it is said that a reviewing court is not to take evidence to determine a fact which the lower court must have determined, but must presume that the evidence adduced in the lower court was such as to justify the conclusion at which it arrived. If this is so, it follows that whenever by reason of the bungling manner in which the Legislature has done its work, or the bungling manner in which the printer of the volume of the statutes has done his work, leaves it uncertain what statute was last passed, a reviewing court is left without power to determine that question, if it has been determined by the court which is being reviewed, and the evidence upon which the lower court acted is not before the reviewing court. Is it possible that the reviewing court is not bound to determine what the statute is on a given subject because, on account of some blunder, the printed volume of the statutes does not distinctly show what statute is in force?

The statute found in 94 O. L., 321, is designated, "House Bill 96," and that found on page 349 is designated, "Senate Bill 216," and hereafter in this opinion the former will be spoken of as "Bill 96" and the latter as "Bill 216."

Suppose that by reason of the carelessness of the printer the date at which each of these bills was passed was so indistinctly printed that one could not by looking at the bills as printed, determine the date, and the lower court determines upon some evidence, no matter what, that the date appearing on Bill 96 is April 18, and that the date appearing on Bill 216 is April 15, and so holds that Bill 96 was the one last passed. The evidence upon which this decision was made is not brought

before the reviewing court, but the plaintiff in error offers to show that the date of Bill 96 is April 15, and the date of Bill 216 is April 18, is it possible that the reviewing court would decline to examine such evidence? Although the courts are bound to take judicial notice of the statutes of the state in force, they do not instinctively know what statutes are in force, but must ascertain by evidence; ordinarily the evidence is the printed volume of the statutes, but where such printed volumes leave the question in doubt, it is clear some other evidence must be resorted to.

If this proposition is not sound, then if the penalty provided in Bill 96 were imprisonment in the county jail for not less than ten nor more than thirty days without any fine whatever, and a conviction was had before a justice of the peace, and sentence of imprisonment pronounced against the prisoner, and the case came by proper proceedings in error before a reviewing court, the court would be bound to presume that the lower court had acted upon sufficient evidence, and the judgment and sentence would be affirmed.

Or, suppose that the penalty provided in Bill 216 was a fine of not less than $25 nor more than $100, without any imprisonment, and a conviction was had before a justice, and the sentence pronounced that the prisoner pay a fine of $50, the reviewing court would be bound to hold that the lower court had acted upon sufficient evidence as to what statute was in force, and so both sentences would be affirmed by the reviewing court.

These two cases might both happen in the same county and on the same day, and we should have the absurd position of a reviewing court affirming a sentence of imprisonment in the one case, where, if one statute were in force, there could be no imprisonment, and affirming another judgment where a fine was imposed, and where, if the other statute were in force, there could be no fine.

In the case of *Iowa* v. *Clare,* 5 Ia., 509, it was held that the appellate court will inform itself and take cognizance of the true reading of a statute by referring to the original act on file in the office of the secretary of state.

A examination of this case shows a distinct holding by the Supreme Court that the reviewing court will examine for itself the question of what statute is to govern the particular case, and that without reference to what examination was made or evidence relied upon by the trial court. This case is cited with approval in *Koehler* v. *Hill*, 14 N. W. Rep., 738; 15 N. W. Rep., 609.

It seems clear that the reviewing court can not escape the responsibility of determining what statute was in force at the time the sentence was pronounced, and the question follows: How shall that be ascertained in a case, where, by reason of the blundering of the Legislature, the statutes appear to have both been passed at the same time?

No case has been found in Ohio where this question has been raised in a proceeding in error; but it is settled that where it becomes necessary by some means other than by the authorized printed volume of the statutes to ascertain at what date a statute takes effect, resort may be had to the journals of the two houses of the General Assembly.

In the case of *State* v. *Mayor of Perrysburgh*, 14 Ohio St., 472, the Supreme Court holds that resort may be had to the journals of the two houses of the General Assembly to determine at what date statutes passed the two houses. In that case it became material because a statute provided in these words: "This act shall take effect from and after the fifteenth day of May next."

This statute was passed in 1852, and was signed by the presiding officers of the two houses on May 3 of that year, and the question was, did it take effect on May 15, 1852, or May 15, 1853? If it was passed on May 3, 1852, and was to take effect on the fifteenth day of the next May, then the date of taking effect would clearly be May 15, 1853. But it was urged that it was actually passed in April, 1852, in which case the fifteenth day of May next would be the fifteenth day of May, 1852. For the purpose of determining this question the Supreme Court looked to the journals of the two houses and found that the statute was actually passed on April 28, 1852, and so held that it took effect on May 15, 1852.

An examination of the journals of the two houses of the Seventy-fourth General Assembly of Ohio discloses this state of facts: Bill 96 was introduced in the House and passed its first reading on January 15, 1900 (House Journal, page 54); it passed its second reading and was referred to the committee on fish culture and game on January 16, 1900 (House Journal, page 58); this committee reported the bill back to the House and recommended its passage on March 8, 1900 (House Journal, page 417); it passed its third reading; was referred to a special committee of one for amendment; the amendment at once reported, and the bill passed the House on March 27, 1900 (House Journal, page 614), and on April 12 it was passed by the Senate without amendment (Senate Journal, page 681).

· Bill 216 was introduced and read the first time in the Senate March 1, 1900 (Senate Journal, page 252); it passed its second reading and was referred to the committee on fish culture and game on March 2, 1900 (Senate Journal, page 258); it was reported back by the committee, with several amendments, which were at once agreed to, on March 16, 1900 (Senate Journal, 354); it was read the third time; amended and passed the Senate on March 21, 1900 (Senate Journal, page 388). The bill then went to the House, and on April 14, 1900, the bill with certain amendments introduced in the House was passed by the House (House Journal, page 984). On the same day the Senate received a message from the House as to its action, and the Senate concurred in the amendments made in the House, and finally passed the bill as amended (Senate Journal, page 772).

It will be seen that the last action of the House on Bill 96 was March 27, and that the last action of the Senate on the same bill was April 12; that the last action of the House on Bill 216 was April 14, and the last action of the Senate on this bill was on the same date. It follows that Bill 216 was the last expression of the Legislature on the matter under consideration, and was, therefore, at the time the sentence complained of in this action was pronounced, the law of the state on that subject.

So far as the signing of these bills is concerned, House Journal 1021 shows that Bill 96 was signed by the speaker in the presence of the House on April 16, and that later on, on the same day, Bill 216 was so signed by the speaker (House Journal, 1031). On the same day the president of the Senate signed Bill 216 in the presence of the Senate (Senate Journal, 819), and later on, on the same day, signed Bill 96 (Senate Journal, 823). So that we get no aid from the actual time of the signing of the bills, for as to one of the presiding officers Bill 96 was signed last, and as to the other, Bill 216 was signed last.

That whoever prepared these bills for publication understood that they took effect in the order in which it is found by this opinion they did take effect, is made probable both from the fact that Bill 96 is printed earlier in the volume, to-wit, 94 O. L., at page 321, the other being printed at page 349, and also by the figures and letters printed with each bill as hereinbefore quoted, Bill 96 being designated as "General Law 206," and Bill 216 being designated as "General Law 226." From what has been said it follows that the sentence pronounced against the plaintiff in error was not authorized by the statutes of the state at the time it was pronounced, and that the judgment of the court of common pleas, affirming such sentence, and the judgment of the justice in pronouncing such sentence should be reversed, and as the time has long since passed for the pronouncing of sentence by the justice, and his jurisdiction to pronounce sentence is lost, it follows that the plaintiff in error must be discharged.

If it be said that this results in permitting one who has violated a criminal statute of the state to go scot free, and that this ought not to be, the answer is that it is better that one so violating the law shall go unpunished than that the courts pronounce and carry into effect a sentence wholly unauthorized by law. Respect for the law will not be encouraged or strengthened by undertaking to administer as law that which is in violation of law. Fortunately the present Legislature, probably having discovered the difficulty which has arisen

in this case, or in any event, having discovered the inconsistency of the two statutes, has repealed them both and substituted another in their stead.

---

### BENEFITS FROM STREET IMPROVEMENT.

[Circuit Court of Franklin County.]

JOHN L. WALDSCHMIDT ET AL V. WILLIS G. BOWLAND, TREASURER.

Decided, March 25, 1905.

*Street—Difficulty of Fixing Benefits from Improvement of—Judgment of Experts—Estoppel as to Grantees—Seeking to Escape Assessment.*

1. In fixing the market value of property, and its enhancement in value from a street improvement, greater weight attaches to the opinions of experts who base their judgment upon actual sales, than to the opinions of residents who have purchased property in the neighborhood for permanent homes, and give little consideration to its market value as it may be affected from time to time by various causes.
2. Estoppel arises against a grantee seeking to escape payment of a street assessment, where it clearly appears that the assumption of that particular assessment by him constituted part of the purchase price.
3. Estoppel also arises as to a grantee who purchased after the resolution declaring the necessity of the improvement and the ordinance ordering the improvement were passed, but before the passage of the ordinance assessing the property.
4. But where the provisions in a deed as to payment of a street assessment does not specify any particular assessment for the improvement of any particular street, estoppel does not arise against resistance by the grantee of collection of an assessment.

SULLIVAN, J.; WILSON, J., and DUSTIN, J., concur.

That the abutting property is specially benefited by a street improvement of the character made upon this street, there is certainly no question. The exact extent of such special benefit is frequently difficult of definite proof.

The present case is no exception to this rule. It is, as in this case, so often a matter of opinion, as to make it most difficult,